# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

WALTER CRAIG STREETER,

    Plaintiff,

    v.

DEPARTMENT OF PUBLIC SAFETY;
TROOPER M. FRAZIER;
and COLONEL CHRIS WRIGHT, in
his official capacity as
Commissioner of Department of
Public Safety,

    Defendants.

2:21-CV-107

## ORDER

Before the Court are Defendants' motions to dismiss.  Dkt. Nos. 32, 40.  The motions have been fully briefed and are ripe for review.  For the reasons stated below, Defendants Frazier and Department of Public Safety's motion, dkt. no. 32, is **GRANTED** in part and **DENIED** in part, and Defendant Wright's motion, dkt. no. 40, is **GRANTED**.

## FACTUAL BACKGROUND

This case arises out of Plaintiff Walter Streeter's arrest on November 8, 2020, in McIntosh County.  Dkt. No. 31 ¶¶ 5-7.

When Plaintiff was two years old, he was diagnosed with a benign brain tumor.  Id. ¶ 3.  He underwent surgery to remove the

brain tumor and place a permanent "ventriculoperitoneal shunt" in his head. Id. As a result of the surgery, Plaintiff suffers from a condition known as "hydrocephalus," which causes "excessive fluid [to] accumulate[] within the cavities of the brain." Id. ¶¶ 2, 26; Dkt. No. 33 at 3. Hydrocephalus "is a chronic neurological condition and [is] considered a disability." Dkt. No. 31 ¶ 2. Plaintiff's "hydrocephalus affects his coordination and balance. For example, he is unable to walk in a straight line, experiences sudden falls, and suffers from abnormal hand-eye coordination." Id. ¶ 4.

On November 8, 2020, at approximately 5:00 p.m., Plaintiff was pulled over by Defendant Trooper M. Frazier ("Defendant Frazier"). Id. ¶ 21. According to the amended complaint, when Plaintiff was pulled over, he was "driving safely and professionally, at a reasonable rate of speed," and "was compliant, lucid, and alert, and he did not exhibit any signs of intoxication." Id. ¶¶ 22-23.[1] Plaintiff likewise "did not have a sleepy affect, bloodshot eyes, or otherwise show signs of

---

[1] This is one of the many facts hotly disputed in the case. For the purposes of ruling on Defendants' motions to dismiss, the Court takes Plaintiff's version of the facts as true. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." (citing Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 954 (11th Cir.1986)).

intoxication."   Id. ¶ 24.   Defendant Frazier asked Plaintiff "to agree to a standard field sobriety test" ("SFST").   Id. ¶ 25.   In response, Plaintiff explained to Defendant Frazier that "his balance is impaired by a physical disability," his hydrocephalus, and showed Defendant Frazier the shunt in his head.   Id. ¶¶ 26–27.   Because Plaintiff's disability "compromises the reliability of an SFST, [Plaintiff] instead volunteered to take a breathalyzer and on-site drug test."   Id. ¶ 28.   Defendant Frazier "said he would consider the request" but then asked Plaintiff to perform three "balance-oriented" SFSTs—a horizontal gaze nystagmus, walk and turn, and one-leg stand.   Id. ¶ 29.

Plaintiff complied, but, he contends, because of his disability, he failed all three tests.   Id. ¶ 30.   Defendant Frazier then gave Plaintiff a breathalyzer test, which "registered a blood-alcohol content of zero."   Id. ¶ 31.   However, because of Plaintiff's three failed SFSTs, Defendant Frazier arrested Plaintiff for aggressive driving and driving under the influence ("DUI") and transported him to the McIntosh County jail.   Id. ¶ 32.   According to the amended complaint, Plaintiff "was arrested solely based on the symptoms of his disability—despite showing no visible signs of intoxication and despite registering a blood-alcohol content of zero on a breathalyzer."   Id. ¶ 40.   Consequently, Plaintiff hired a criminal defense attorney for the charges.   Id. ¶ 33.   "During prosecution, all toxicology reports showed negative

results, proving without a doubt that [Plaintiff] was not under the influence of drugs or alcohol." Id. ¶ 34.  On January 11, 2021, three months after his arrest, the McIntosh County State Court granted Plaintiff "a motion for nolle prosequi"[2] on both the DUI and aggressive driving charges. Id. ¶ 35.

Plaintiff asserts Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983 against Defendant Frazier, dkt. no. 31 ¶¶ 57-63 (Count III), and claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. ("ADA"), dkt. no. 31 ¶¶ 42-51 (Count I), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, et seq. ("RA"), dkt. no. 31 ¶¶ 52-56 (Count II), against Defendants Department of Public Safety ("DPS") and Commissioner of DPS, Chris Wright.

Defendants moved to dismiss.  Defendant Frazier contends dismissal is warranted because he is entitled to qualified immunity.  Dkt. No. 32-1 at 3-6.  Defendant DPS contends dismissal

---

[2] Plaintiff asserts that the state court granted *his* motion for nolle prosequi, but under the statute, the *prosecutor* makes this motion, with the consent of the defendant (Plaintiff was the defendant in the criminal prosecution).  Dkt. No. 31 ¶ 35; see also O.C.G.A. § 17-8-3 ("After an examination of the case in open court and before it has been submitted to a jury, the prosecuting attorney may enter a nolle prosequi with the consent of the court. After the case has been submitted to a jury, a nolle prosequi shall not be entered except by the consent of the defendant. The prosecuting attorney shall notify the defendant and the defendant's attorney of record within 30 days of the entry of a nolle prosequi either personally or in writing; such written notice shall be sent by regular mail to the defendant at the defendant's last known address and to the defendant's attorney of record.").

is warranted for five reasons: (1) Eleventh Amendment sovereign immunity bars Plaintiff's claims; (2) Plaintiff cannot recover compensatory damages under the ADA and RA; (3) the ADA and RA do not apply to police arrests; (4) Plaintiff was not arrested by reason of his disability; and (5) Plaintiff's requested accommodation was not reasonable.  Id. at 7.  Defendant Wright contends dismissal is warranted because he was never properly served, such that the Court lacks personal jurisdiction over him, and in the alternative, that the claims against him are duplicative of the claims against Defendant DPS such that they are redundant, and he incorporates all Defendants DPS and Frazier's arguments for dismissal.  See generally Dkt. No. 40-1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at

570).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).  Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (emphasis added) (quoting Fed. R. Civ. Proc. 8(a)(2)).

6

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678) abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449 (2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## DISCUSSION

### I.   Defendants DPS and Frazier's motion to dismiss.

### A. Plaintiff has standing.

Defendants contend Plaintiff lacks standing for his ADA Title II and RA Section 504 injunctive and declaratory relief claims because he has not shown that he is in actual, imminent danger of being arrested for a DUI based on his disability. Dkt. No. 32-1 at 13-14.

Under Article III of the U.S. Constitution, Plaintiff "'bears the burden of showing that he has standing' to pursue [each] 'type of relief' [sought].'" Banks v. Sec'y, Dep't of Health & Hum. Servs., 38 F.4th 86, 93 (11th Cir. 2022) (quoting Summers v. Earth

Island Inst., 555 U.S. 488, 493 (2008)).  Article III standing is

"a threshold jurisdictional question which must be addressed prior

to and independent of the merits of a party's claims."  Dillard v.

Baldwin Cnty. Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000)

(citations omitted), abrogated on other grounds by Dillard v.

Chilton Cty. Comm'n, 495 F.3d 1324 (11th Cir. 2007). "[S]tanding

is 'perhaps the most important' jurisdictional doctrine . . . and,

as with any jurisdictional requisite, [this Court is] powerless to

hear a case when it is lacking." Bochese v. Town of Ponce Inlet,

405 F.3d 964, 974 (11th Cir. 2005) (quoting Bischoff v. Osceola

Cnty., 222 F.3d 874, 877-78 (11th Cir. 2000)).

        To establish standing,

        a plaintiff must show (1) it has suffered an "injury in
        fact" that is (a) concrete and particularized and (b)
        actual or imminent, not conjectural or hypothetical; (2)
        the injury is fairly traceable to the challenged action
        of the defendant; and (3) it is likely, as opposed to
        merely speculative, that the injury will be redressed by
        a favorable decision.

Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d

1296, 1302 (11th Cir. 2011) (quoting Friends of the Earth, Inc. v.

Laidlaw Envt'l. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000)).

        Defendant does not contest the causation and redressability

elements of Plaintiff's standing, so the only issue is whether

Plaintiff's complaint alleges a sufficient injury-in-fact.  In

order to satisfy the injury-in-fact requirement at the motion to

dismiss stage, "it may be sufficient to provide 'general factual

allegations of injury resulting from the defendant's conduct.'" Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc., v. EPA, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting Bischoff, 222 F.3d at 878). This is sufficient because on a motion to dismiss, "we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)).

Defendant relies on City of Los Angeles v. Lyons, 461 U.S. 95 (1982), in arguing Plaintiff has not alleged facts showing a "police officer [will] suspect [him] of driving under the influence, pull [him] over, suspect that [he] is an impaired driver, order [him] to perform [an SFST], and then conclude based on the [SFST] and the specific circumstances of the stop to arrest [him] for DUI in violation of the Fourth Amendment and/or Title II of the ADA," all while he is "driving safely and professionally and allegedly does not exhibit any signs of intoxication." Dkt. No. 32-1 at 13.

However, Lyons is distinguishable from the present case. There, the Supreme Court held the plaintiff's injunctive relief claim was moot because it was "no more than conjecture" that the plaintiff would be placed in an illegal chokehold in the future. Lyons, 461 U.S. at 108. The Court in Lyons explained,

But even assuming that Lyons would again be stopped for
a traffic or other violation in the reasonably near
future, it is untenable to assert, *and the complaint
made no such allegation*, that strangleholds are applied
by the Los Angeles police to every citizen who is stopped
or arrested regardless of the conduct of the person
stopped. We cannot agree that the "odds," that Lyons
would not only again be stopped for a traffic violation
but would also be subjected to a chokehold without any
provocation whatsoever are sufficient to make out a
federal case for equitable relief.

Id. (citation omitted) (emphasis added).

Unlike in Lyons, where the Supreme Court explained that there
were no factual allegations that chokeholds were "applied by the
Los Angeles police to every citizen who is stopped or arrested
regardless of the conduct of the person stopped," and "without
provocation," here, Plaintiff has alleged that DPS has a policy of
conducting a field sobriety test as standard procedure in potential
DUI stops, regardless of a person's disability—be it a balance-
oriented disorder or a broken leg—and that an arrest after a
failure of this test is certain to follow, even in the face of a
zero blood-alcohol content result.  Id.; Dkt. No 31 ¶¶ 5, 29, 36,
37, 39, 60, 61.  That Plaintiff's occupation is commercial driving
only increases the "odds."  Lyons, 461 U.S. at 108 (citation
omitted).  So, Plaintiff has sufficiently alleged an injury-in-
fact that is actual and imminent.

Taking Plaintiff's allegations as true, his arrest resulting
from his failure to pass the SFSTs due to his disability is enough
to allege a concrete invasion of Plaintiff's protected interest in

not being discriminated against under ADA and RA.  Thus, Plaintiff has standing.

**B. Defendant Frazier is not entitled to qualified immunity.**

Plaintiff asserts a 42 U.S.C. § 1983 claim against Defendant Frazier alleging he violated Plaintiff's Fourth Amendment rights because he arrested Plaintiff without probable cause.  Dkt. No. 31 ¶¶ 1, 5, 18-20, 25-32, 57-63.  Defendant Frazier contends he is entitled to qualified immunity because he had at least arguable probable cause, and, in the alternative, because there is no clearly established law that his decision to arrest Plaintiff was unconstitutional.  Dkt. No. 32-1 at 3-6.

Qualified immunity shields government officials from liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Piazza v. Jefferson Cnty., 923 F.3d 947, 951 (11th Cir. 2019) (quoting Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996)).  An officer asserting a qualified immunity defense "bears the initial burden of showing that he was 'acting within his discretionary authority.'"  Id. (quoting Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007)).

Because the Parties do not dispute Defendant Frazier was acting within his discretionary authority, the burden shifts to Plaintiff to show "that (1) the officer violated a constitutional right[,] and (2) the right was clearly established at the time of

11

the alleged violation." Id. (citing Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). These two requirements may be analyzed in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

> When presented with . . . officers' motions to dismiss [for failure to state a claim and qualified immunity], both [Eleventh Circuit] precedent and precedent from the Supreme Court instruct the district court to analyze whether, taking [the plaintiff's] allegations as true, the . . . complaint asserted a violation of a clearly established constitutional right.

Joseph v. Gee, 708 F. App'x 642, 643-44 (11th Cir. 2018) (citations omitted).

The Fourth Amendment prohibition of unreasonable searches and seizures includes arrests, but an exception applies for warrantless arrests based on probable cause where the arresting officer believes that a crime "has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). "Probable cause is established where facts, 'derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed.'" Garcia v. Casey, No. 21-13632, 2023 WL 4837674, at *7 (11th Cir. July 28, 2023) (quoting Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)). "It requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting Illinois v.

Gates, 462 U.S. 213, 243 n.13 (1983)); see also Paez v. Mulvey, 915 F.3d 1276, 1286 (11th Cir. 2019) ("[I]t does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence . . . . So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." (citation omitted)).  Even "an affirmative defense to an alleged crime does not necessarily vitiate probable cause." Paez, 915 F.3d at 1286 (citing Manners v. Cannella, 891 F.3d 959, 971–72 (11th Cir. 2018)); see also District of Columbia v. Wesby, 583 U.S. 48, 57 (2018) ("It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" (quoting Gates, 462 U.S. at 243-44, n.13)); Jordan v. Mosley, 487 F.3d 1350, 1356 (11th Cir. 2007) ("All that is required is probable cause to believe that the suspect did the prohibited acts.").

So, "innocent behavior frequently will provide the basis for a showing of probable cause."  Gates, 462 U.S. at 243 n.13. "Indeed, '[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.'"  Khokhar, 884 F.3d at 1298 (alteration in original)

(quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979)).  Where these requirements are met, probable cause is an absolute defense to liability.  <u>Id.</u> at 1297.

"But to establish the defense of qualified immunity for a false arrest claim, we have held that 'an officer need not have actual probable cause, but only "arguable" probable cause.'" <u>Garcia</u>, 2023 WL 4837674, at *7 (quoting <u>Brown</u>, 608 F.3d at 734). "An officer has *arguable* probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'"  <u>Id.</u> (quoting <u>Wesby</u>, 583 U.S. at 68).  Accordingly, "[a]n officer lacks arguable probable cause only if 'the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue.'"  <u>Id.</u> (alteration accepted) (quoting <u>Washington v. Howard</u>, 25 F.4th 891, 902 (11th Cir. 2022)).  In <u>Garcia</u>, the Eleventh Circuit explained,

> We believe the doctrine of "arguable probable cause" is a useful shorthand to collapse these three inquiries into a single question in a wrongful arrest case. That is, we must ask whether "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." <u>Wesby</u>, 583 U.S. at 68. So an officer may lack arguable probable cause because an existing precedent establishes that there was no actual probable cause for an arrest on similar facts. Or an officer may lack arguable probable cause because the text of an applicable statute plainly precludes him from making an arrest under that statute. Or the officer may have been

> so lacking in evidence to support probable cause that
> the arrest was obviously unconstitutional. But the
> arguable probable cause inquiry in a false arrest case
> is no different from the clearly established law inquiry
> in any other qualified immunity case. Unless the law
> "makes it obvious that the [officer's] acts violated the
> plaintiff's rights," Washington, 25 F. 4th at 903, the
> officer has qualified immunity.

Garcia, 2023 WL 4837674, at *8 (alteration in original).

"The concept of arguable probable cause therefore allows for the possibility that an officer might 'reasonably but mistakenly conclude that probable cause is present.'" Khokhar, 884 F.3d at 1298 (quoting Brown, 608 F.3d at 735). Moreover, while "an officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest,' the officer 'may not choose to ignore information that has been offered to him or her . . . or elect not to obtain easily discoverable facts.'" Jackson v. Cowan, No. 19-13181, 2022 WL 3973705, at *5 (11th Cir. 2022) (alteration in original) (citation omitted), cert denied, 143 S. Ct. 1753 (2023). "Although arguable probable cause does not 'require proving every element of a crime,' qualified immunity is not appropriate when a reasonable officer, based on readily available information, would have known that the plaintiff's conduct did not satisfy an element of the offense." Id. at *6 (citations omitted).

"Whether an officer has probable cause or arguable probable cause, or neither, 'depends on the elements of the alleged crime

and the operative fact pattern.'" Khokhar, 884 F.3d at 1298 (quoting Brown, 608 F.3d at 735). So, the totality of the facts and circumstances known to Defendant Frazier, not one fact or circumstance alone, determines whether he had probable cause or arguable probable cause. Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." (citations omitted)); United States v. Arvizu, 534 U.S. 266, 274 (2002) (rejecting a "divide-and-conquer analysis" which ignores an officer's observation that was "by itself readily susceptible to an innocent explanation").

Plaintiff was arrested on a Georgia DUI charge,[3] so, the controlling statute is O.C.G.A. § 40-6-391. Because this case is before the Court on Defendants' motion to dismiss, we must consider whether Plaintiff carried his burden of alleging facts sufficient to show that Defendant Frazier had neither probable cause nor

---

[3] Plaintiff was arrested for both DUI and aggressive driving, but Defendants' motion and the briefing by both parties on the false arrest issue address only DUI under the guise of the "any crime rule." Dkt. No. 38 at 1-2; see also Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020); Fish v. Brown, 838 F.3d 1153, 1168 (11th Cir. 2016) ("[I]f the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." (quoting Brown, 608 F.3d at 735)). Regardless, as explained infra, Defendant Frazier is not entitled to qualified immunity, and the issue of arguable probable cause for Plaintiff's aggressive driving charge is not otherwise before the Court.

arguable probable cause for the arrest.  Under Georgia law, it is a misdemeanor, upon a first or second conviction, for a person to "drive or be in actual physical control of any moving vehicle while":

> (1) Under the influence of alcohol to the extent that it is less safe for the person to drive;

> (2) Under the influence of any drug to the extent that it is less safe for the person to drive;

> (3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive;

> (4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection to the extent that it is less safe for the person to drive;

> (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended; or

> (6) Subject to the provisions of subsection (b) of this Code section, there is any amount of marijuana or a controlled substance, as defined in Code Section 16-13-21, present in the person's blood or urine, or both, including the metabolites and derivatives of each or both without regard to whether or not any alcohol is present in the person's breath or blood.

O.C.G.A § 40-6-391(a).  Moreover, Georgia courts have held that

> [E]vidence which shows *only* that a defendant had alcohol in her body while driving provides insufficient probable cause to arrest for DUI. Impaired driving ability depends solely upon an individual's response to alcohol. Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver.

Handley v. State, 668 S.E.2d 855, 856 (Ga. Ct. App. 2008) (quoting State v. Ellison, 611 S.E.2d 129, 133-35 (Ga. Ct. App. 2009) (finding evidence that defendant had bloodshot eyes, smelled of alcohol, and refused to perform a field sobriety test was insufficient to constitute probable cause for a driving under the influence arrest)); see also id. at 856-57 (holding that evidence that the defendant smelled of alcohol, and alco-sensor test revealed the presence of alcohol, and that the defendant admitted to drinking "earlier in the day" was insufficient under Georgia law to show probable cause to arrest the defendant for driving under the influence); Clay v. State, 387 S.E.2d 644, 645-46 (Ga. Ct. App. 1989) (explaining odor of alcohol alone, without other evidence of intoxication such as slurred speech or unusual or erratic driving, is insufficient to raise inference that driver is intoxicated); cf. Byrd v. State, 523 S.E.2d 578, 579 (Ga. Ct. App. 1999) (evidence of odor of alcohol, driver admitting to drinking, and driver's refusal to take chemical test can be sufficient evidence, among other things, to indicate that driver was driving under influence of alcohol).

So, no single factor—the presence of alcohol on a person's breath, the failure of a field sobriety test, the appearance of unusual driving, etc.—is sufficient to confer probable cause for a Georgia DUI arrest.  Hughes v. State, 770 S.E.2d 636, 641 (Ga.

2015) ("Standing alone, any one of these circumstances would not be enough for a reasonable officer to conclude that [the defendant] probably had been driving under the influence."); see also Burnett v. Unified Gov't of Athens-Clarke Cnty., No. 3:08-CV-04, 2009 WL 5175296, at *6 (M.D. Ga. Dec. 22, 2009) (holding officer had probable cause to arrest plaintiff for driving under the influence under Georgia law where plaintiff had "three to four beers," he was stopped for "erratic driving," his breath smelled of alcohol, and he "refused to consent to the state-administered chemical test").

It is not yet clear, based on the facts alleged in the amended complaint, that Defendant Frazier properly considered exculpatory information regarding Plaintiff's disability in determining whether probable cause existed to arrest Plaintiff. See Kingsland v. City of Miami, 382 F.3d 1220, 1228 (11th Cir. 2004) ("[O]fficers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon."), abrogated on other grounds by Aguirre, 965 F.3d at 1147.

Regardless, the failed SFSTs alone, juxtaposed with the absence of any other indicators of impaired driving, and on the backdrop of Plaintiff's disclosed disability, are insufficient to confer even arguable probable cause for Plaintiff's arrest. Hughes, 770 S.E.2d at 641. Accepting Plaintiff's reasonable

19

allegations as true, while Plaintiff concedes he did in fact fail the three SFSTs, dkt. no. 31 ¶¶ 29-30, 32, the other information Defendant Frazier had when he arrested Plaintiff, according to the amended complaint, was that Plaintiff was "driving safely and professionally, at a reasonable rate of speed," and was "compliant, lucid, and alert, and he did not exhibit any signs of intoxication," id. ¶¶ 22, 23; dkt. no. 32-1 at 2, that Plaintiff did not "have a sleepy affect, bloodshot eyes, or otherwise show signs of intoxication," dkt. no. 31 ¶ 24, that Plaintiff registered a blood-alcohol level of zero, id. ¶ 31; dkt. no. 32-1 at 2, and that Plaintiff suffers from a balance-impairing disability, making it impossible to pass any SFST, dkt. no. 31 ¶¶ 26-28.

According to the amended complaint, despite being informed of Plaintiff's balance-impairing disability and seeing the shunt in Plaintiff's head, and with no other indication of intoxication whatsoever, Defendant Frazier subjected Plaintiff to three SFSTs that Plaintiff, predictably, failed.  Dkt. No. 31 ¶¶ 25-30.  Then, according to the amended complaint, despite no other signs of intoxication—no erratic or unusual driving, no presence or scent of alcohol, no bloodshot eyes, no sleepy affect—and in the face of a subsequent breathalyzer test that registered zero alcohol content, Defendant Frazier arrested Plaintiff for DUI and aggressive driving—charges that were later abandoned by the prosecution.  Id. ¶¶ 24-32, 35.

This is not, according to the amended complaint, a situation where an officer "reasonably but mistakenly conclude[d] that probable cause [wa]s present." Khokhar, 884 F.3d at 1298 (quoting Brown, 608 F.3d at 735).  To the contrary, even ignoring that Plaintiff's disclosed disability calls into question Defendant Frazier's reliance on the SFSTs here, based on the facts alleged in the complaint, no reasonable officer could, even mistakenly, conclude probable cause existed for Plaintiff's arrest based on "one . . . circumstance[]" alone.  Hughes, 770 S.E.2d at 641 ("Standing alone, any one of these circumstances would not be enough for a reasonable officer to conclude that [the defendant] probably had been driving under the influence.").

Plaintiff's failure of the SFSTs, alone, is insufficient for a reasonable officer to conclude that Plaintiff probably had been driving under the influence. Cf. Pringle, 540 U.S. at 371; Hughes, 770 S.E.2d at 641; Burnett, 2009 WL 5175296, at *6.  This conclusion is bolstered by the fact that Plaintiff was, according to the amended complaint, "driving safely and professionally" and exhibited no other signs of intoxication.  Dkt. No. 31 ¶ 22. Accordingly, at this stage, Defendant Frazier did not have arguable probable cause for Plaintiff's arrest because considering the totality of the circumstances as alleged in the amended complaint, no reasonable officer could have believed probable cause existed based on the information Defendant Frazier possessed at the time.

Indeed, to find otherwise would be to ignore the totality of the circumstances and take a "divide-and-conquer" analysis. <u>Arvizu</u>, 534 U.S. at 274.

Taking these allegations in the light most favorable to Plaintiff, Plaintiff has plausibly alleged Defendant Frazier did not have probable cause or arguable probable cause to arrest Plaintiff for DUI based on only one factor. Moreover, under <u>Hughes</u>, an arrest based on a single factor alone was a violation of clearly established law at the time of Plaintiff's arrest in 2020. <u>Hughes</u>, 770 S.E.2d at 641 ("Standing alone, any one of these circumstances would not be enough for a reasonable officer to conclude that [the defendant] probably had been driving under the influence."). Regardless, without a doubt, it was clearly established at the time of Plaintiff's arrest that any arrest made without probable cause violates the Fourth Amendment. <u>Herren v. Bowyer</u>, 850 F.2d 1543, 1547 (11th Cir. 1988). So, because the Court concludes that Plaintiff has sufficiently pled Defendant Frazier lacked probable cause to arrest Plaintiff, at this stage, Plaintiff's arrest was also a violation of clearly established law. <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1258 (11th Cir. 2010); <u>accord</u> <u>Barnett v. MacArthur</u>, 715 F. App'x 894, 897, 907 (11th Cir. 2017) (finding dispute of fact regarding probable cause inquiry because of negative breathalyzer test and disputed SFST results).

Accordingly, qualified immunity for Defendant Frazier is not appropriate at this early stage, and Defendants' motion to dismiss, to that end, is **DENIED**.

**C. Plaintiff's ADA and RA claims against Defendant DPS are dismissed to the extent they seek money damages.**

Defendants contend dismissal of Plaintiff's Title II ADA and Section 504 RA claims is appropriate because the Eleventh Amendment bars Plaintiff's claims,[4] because Plaintiff cannot recover monetary damages under both ADA and RA, because ADA and RA do not apply to arrests, because Plaintiff was not arrested "by reason of" his disability, and because Plaintiff's requested accommodation was not reasonable.  Dkt. No. 32-1 at 6-13.

Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504, which is almost "identical," Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019), provides in pertinent part,

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this

---

[4] Defendants contend the Eleventh Amendment bars Plaintiff's ADA claim "[b]ecause no Fourth Amendment violation occurred."  Dkt. No. 32-1 at 7 (citing Black v. Wigington, 811 F.3d 1259, 1269 (11th Cir. 2016)).  However, at this stage, the Court concludes Plaintiff has adequately pled a Fourth Amendment violation.  See supra pp. 11-22.  So, this argument necessarily fails.

> title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).  Because the two statutes bear textual similarities, "'the same standards govern' claims under both, and we 're[ly] on cases construing [Title II and § 504] interchangeably.'"  Silberman, 927 F.3d at 1133 (alterations in original) (quoting T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., 610 F.3d 588, 604 (11th Cir. 2010)).  "In other words, whatever we have said—or say now—about Title II goes for § 504, and vice versa." Id. at 1333-34.

Further, "Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act. By continuing to accept federal funds, the state agencies have waived their immunity." Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1290-93 (11th Cir. 2003) (per curiam) (footnote omitted).  Likewise, "Congress abrogated sovereign immunity for conduct that simultaneously violates Title II and the Equal Protection Clause." Black, 811 F.3d at 1269.  So,

> To state a claim under either Title II or § 504, a plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit,

24

or discrimination was by reason of the plaintiff's disability."

Silberman, 927 F.3d. at 1134 (quoting Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)).

"In the ordinary course, proof of a Title II or § 504 violation entitles a plaintiff only to injunctive relief." Id. (quoting Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 831 (11th Cir. 2017)). So, to recover damages, as Plaintiff seeks here, "a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" Id. (quoting Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 348 (11th Cir. 2012)). "Deliberate indifference" is an "exacting standard." Id. (quoting J.S. Jr. ex rel. J.S., III, v. Houston Cnty. Bd. of Educ., 877 F.3d 979, 987 (11th Cir. 2017)). It "requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." Id. (alteration in original) (quoting Liese, 701 F.3d at 344).

> Moreover, in order to hold a government entity liable, the plaintiff must demonstrate that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond."

Id. (alterations in original) (quoting Liese, 701 F.3d at 349).
"[T]hat 'official' must be 'high enough up the chain-of-command
that his [or her] acts constitute an official decision by the
[entity] not to remedy the misconduct.'" Id. (second and third
alterations in original) (quoting J.S., 877 F.3d at 987).

    i.   **Whether ADA and RA apply in the arrest context.**

    The Parties do not dispute that Plaintiff has sufficiently
pled the first prong of an ADA or RA claim, i.e., that he is a
"qualified individual with a disability." Silberman, 927 F.3d at
1134.  Rather, Defendants dispute whether Plaintiff has stated a
claim to satisfy the second prong, i.e., that he was "either
excluded from participation in or denied the benefits of a public
entity's services, programs, or activities, or was otherwise
discriminated against by the public entity." Id.   More
specifically, Defendants dispute whether ADA and RA apply to police
arrests at all.  Dkt. No. 32-1 at 9-11.

    As an initial matter, Defendants contend this case is
ensnarled in a circuit split regarding whether the ADA and RA can
apply in the arrest context.  Defendants insist the Court should
adopt the Fifth Circuit's rationale in Hainze v. Richards, 207
F.3d 795, 801 (5th Cir. 2000), to find the ADA and RA do not apply
to arrests.  Dkt. No. 32-1 at 9-11.  Plaintiff, on the other hand,
insists the Eleventh Circuit's decision in Bircoll v. Miami-Dade

County, 480 F.3d 1072 (11th Cir. 2007), which held the opposite, is the appropriate case to apply.  Dkt. No. 33 at 10-12.

In Bircoll, the Eleventh Circuit held that Title II's language protecting qualified individuals from being "subjected to discrimination by any such entity" applies to discrimination by the police, a public entity.  Bircoll, 480 F.3d at 1084–85.  The Bircoll court reasoned that its prior decision in Bledsoe v. Palm Beach County Soil & Water Conservation District, 133 F.3d 816, 821–22 (11th Cir. 1998), already clarified that the final clause of § 12132 "protects qualified individuals with a disability from being 'subjected to discrimination by any such entity,' and is not tied directly to the 'services, programs, or activities' of the public entity."  Id. (quoting Bledsoe, 133 F.3d at 821–22); see also Bledsoe, 133 F.3d at 822 (the final clause in Title II "is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." (quoting Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir. 1997)).

In declining to address the circuit split, the Bircoll court distinguished its holding by framing the circuits' debate as "whether police conduct during an arrest is a *program, service, or activity* covered by the ADA."  480 F.3d at 1084 (emphasis added) (referring to the first clause of § 12132).  In coming to its conclusion, and declining to enter the circuits' debate, the

27

<u>Bircoll</u> court cited the Tenth Circuit's decision in <u>Gohier v.</u>
<u>Enright</u>, 186 F.3d 1216, 1220 (10th Cir. 1999), where, in the
Eleventh Circuit's words, the Tenth Circuit "not[ed] that the
magistrate judge 'ignored the second basis for a Title II claim'
and emphasiz[ed] the disjunctive language '<u>or</u> be subjected to
discrimination' in the final clause of § 12132." <u>Id.</u> at 1085
(quoting <u>Gohier</u>, 186 F.3d at 1220).

Defendants urge the Fifth Circuit's opinion in <u>Hainze</u>
controls this case and "is a correct application of the law." Dkt.
No. 32-1 at 9-11.

In <u>Hainze</u>, "police officers responded to a request to take a
mentally ill individual, Hainze, to a hospital. When they arrived
at the scene, Hainze, with a knife in his hand, began to walk
toward one of the officers." <u>Bircoll</u>, 480 F.3d at 1083-84 (citing
<u>Hainze</u>, 207 F.3d at 797). The Fifth Circuit held Title II did not
apply to "an officer's on-the-street responses to reported
disturbances or other similar incidents, whether or not those calls
involve subjects with mental disabilities, prior to the officer's
securing the scene and ensuring that there is no threat to human
life." <u>Hainze</u>, 207 F.3d at 801.

Accordingly, the <u>Hainze</u> court concluded the plaintiff was not
denied the benefits and protections of the county's mental health
training when officers used deadly force after the plaintiff
approached one of them with a knife and was not entitled to

reasonable accommodations "in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians." Id. The Hainze court also explained that its conclusion was consistent with the Supreme Court's decision in Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998), such that "[o]nce the area was secure and there was no threat to human safety, the . . . deputies would have been under a duty to reasonably accommodate [the] disability in handling and transporting him to a mental health facility." Id. at 802 (first citing 28 C.F.R. § 35.130(b); then citing Yeskey, 524 U.S. at 206; and then citing Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998) (ADA and RA apply to police transportation of arrestee)). Notably, the Hainze court did not conclude, as Defendants insist, that the ADA and RA do not apply in the context of *any* arrest. Dkt. No. 32-1 at 9-11.

Regardless, this Court is not left with a daunting choice in deciding whether to side with the Fifth as opposed to the Eleventh Circuit. It is the Eleventh Circuit which guides this Court. In Bircoll, the Eleventh Circuit examined the plaintiff's claims "under the final clause in the Title II statute: that he was 'subjected to discrimination' by a public entity, the police, by reason of his disability." 480 F.3d at 1084 (citing 42 U.S.C. § 12132). Here, Plaintiff alleges that Defendant DPS is a "public entity" within the meaning of Title II of the ADA. Dkt. No. 31

¶¶ 14, 44.  Moreover, Plaintiff also alleges Defendant DPS failed "to provide disabled persons with reasonable accommodations in such circumstances," in violation of the ADA's prohibition of discrimination by public entities.  Id. ¶¶ 42-51; Id. ¶¶ 52-56 (alleging the same regarding § 504 claims).  So, Plaintiff's amended complaint falls squarely within the "subjected to discrimination by any such entity" prong of Title II.

Accordingly, Defendants' motion to dismiss, to that end, is **DENIED**.

### ii.  **Plaintiff adequately pled that he was arrested "by reason of" his disability.**

Defendants also contend Plaintiff failed to plead the third prong of an ADA or RA claim, i.e., that he was discriminated against "by reason of" his disability.  Dkt. No. 32-1 at 11-12. Plaintiff alleges he is a qualified individual with a disability, namely that he suffers from hydrocephalus.  Dkt. No. 31 ¶¶ 2-3, 12-13, 26-27, 29.  Plaintiff also sufficiently alleges DPS discriminated against him "by reason of" his hydrocephalus by alleging his arrest was a "direct result of" and "solely based on" his failure to pass the SFSTs due to his disclosed disability. Id. ¶¶ 5, 40.

Defendants lean on two cases to support their argument that Plaintiff has not been discriminated against by reason of his hydrocephalus:  Rylee v. Chapman, No. 2:06-cv-0158, 2008 WL

3538559, at *1 (N.D. Ga. 2008), and Bates ex. rel. Johns v. Chesterfield County, 216 F.3d 367, 373 (4th Cir. 2000). Dkt. No. 32-1 at 11-12.

In Rylee, the court found that the plaintiff was not discriminated against by reason of a hearing impairment but was arrested because of domestic violence complaints by his wife and child. Rylee, 2008 WL 3538559, at *8. And in Bates, the court found the plaintiff was not discriminated against by reason of his autism but was arrested because there was "probable cause to believe that he assaulted a police officer." Bates, 216 F.3d at 373. So, the courts in both Rylee and Bates, ruling on motions for summary judgment, concluded that the police officers' actions were "reasonable" under the circumstances. See Id. at 373 ("And Bates was not arrested because of his disability. Rather, he was arrested because there was probable cause to believe that he assaulted a police officer. Thus the stop, the use of force, and the arrest of Bates were not by reason of Bates' disability, but because of Bates' objectively verifiable misconduct. Such reasonable police behavior is not discrimination."); Rylee, 2008 WL 358559, at *8 ("What is more, [p]laintiff was not arrested, questioned, or booked as a result of his hearing impairment. His arrest was the result of his wife and son's domestic violence complaint." (citing Bates, 216 F.3d at 373)).

Here, Defendants similarly contend that Plaintiff was not arrested because of his disability, but because he failed three SFSTs. Dkt. No. 32-1 at 11-12. However, according to the amended complaint, Plaintiff's SFST failure, the only reason provided for Plaintiff's arrest, was explained and foreshadowed by Plaintiff's own admission regarding his disability and was called into doubt by the subsequent breathalyzer test and the lack of any other indication of intoxication. Dkt. No. 31 ¶¶ 24-32. Moreover, unlike in Rylee and Bates, the information Defendant Frazier had at the time he arrested Plaintiff, according to the amended complaint, was that Plaintiff was "driving safely and professionally, at a reasonable rate of speed" and was "compliant, lucid, and alert, and he did not exhibit any signs of intoxication," id. ¶¶ 22-23; dkt. no. 32-1 at 2, that Plaintiff did not "have a sleepy affect, bloodshot eyes, or otherwise show signs of intoxication," dkt. no. 31 ¶ 24, that Plaintiff registered a blood-alcohol level of zero, id. ¶ 31; dkt. no. 32-1 at 2, and that, as explained by Plaintiff, he suffers from a balance-impairing disability, making it impossible to pass any SFST, dkt. no. 31 ¶¶ 26-28. At this stage, there is no allegation from which to draw an inference for any other basis for Plaintiff's arrest aside from the one he has pled—his disability. It may well be that the summary judgment cases—Rylee and Bates—will be more useful at, well, the summary judgment stage. At this stage, though,

Plaintiff has sufficiently pled that his arrest was predicated on his failure of the SFSTs solely because of his disability.  Id. ¶¶ 30, 32, 39-40, 50; Dkt. No. 33 at 11-12, 14-15.  Therefore, Defendants' motion to dismiss because Plaintiff failed to plead he was arrested "by reason of his disability", is **DENIED**.

### iii. Plaintiff adequately pled that Defendants denied his request for reasonable accommodations.

Furthermore, Defendants' contention that Plaintiff fails to state a claim because his request "was not reasonable" necessarily fails at this stage.  Dkt. No. 32-1 at 12-13.  Whether a requested accommodation is reasonable is a fact-specific inquiry that requires "full development of the record."  Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, Inc., 2012 WL 1570063, at *6 (S.D. Fla. May 2, 2012) (citing Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) ("Whether an accommodation is reasonable depends on specific circumstances.")).  Thus, Defendants' argument fails because it is improper in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Therefore, Defendants' motion to dismiss because Plaintiff's accommodation request was not reasonable is **DENIED**.

### iv. Plaintiff cannot recover monetary damages for his Title II and Section 504 claims.

Defendants contend Plaintiff's allegations "fail to plausibly show that Commissioner Wright acted with deliberate indifference,"

such that he fails to sufficiently allege a claim for monetary damages under ADA and RA.  Dkt. No. 32-1 at 9.  To recover monetary damages under either Title II of the ADA or Section 504 of the RA, Plaintiff "must prove that the entity he has sued engaged in intentional discrimination." Silberman, 927 F.3d at 1134. Plaintiff can meet this hurdle by pointing to an official who had the "authority to address the alleged discrimination and to institute corrective measures" but was deliberately indifferent to his rights. Id. (quoting Liese, 701 F.3d at 344).  In this context, deliberate indifference is shown where an official "had actual knowledge of discrimination in the entity's programs and failed adequately to respond." Ingram v. Kubik, 30 F.4th 1241, 1257 (11th Cir. 2022) (quoting Silberman, 927 F.3d at 1134).

Plaintiff fails to plausibly allege that Defendant Wright acted with deliberate indifference.  Plaintiff alleges that his arrest was "a direct result of policies of [DPS], for which Defendant Wright bears responsibility, and which do not account for the legal requirement to make accommodations for people with disabilities in the course of investigating such charges." Dkt. No. 31 ¶ 5.  Sprinkled throughout the amended complaint are Plaintiff's allegations that Defendant Wright has "the authority" to implement these policies, and has failed to do so, and that this failure "is a result of deliberate indifference." Id. ¶¶ 5-6, 16-17, 38, 47-50.  But Plaintiff fails to allege a single fact

to show the requisite knowledge of discrimination and subsequent failure to correct that discrimination required to plead deliberate indifference.

Instead, Plaintiff alleges that the absence of policies addressing cases like his, where a person who is unable to pass an SFST due to a disability, evinces deliberate indifference. Dkt. No. 31 ¶¶ 37-38. However, an absence of policies alone is insufficient to meet the "exacting standard," which requires Plaintiff to allege that an official "had '*actual knowledge* of discrimination in the [entity's] programs and fail[ed] adequately to respond.'" Silberman, 927 F.3d at 1134 (alterations in original) (emphasis added) (first quoting J.S., 877 F.3d at 987; and then quoting Liese, 701 F.3d at 349).

Plaintiff does not allege, for example, that Defendant Wright had actual knowledge of officers' discrimination against persons with physical disabilities during a traffic stop, DUI investigation, arrest, or otherwise.[5]   Instead, Plaintiff's

_____

[5] In his response brief, Plaintiff argues the Court should infer Commissioner Wright had the requisite knowledge for deliberate indifference from "facts" that are "common knowledge," despite his concession that he "does not allege these facts in detail in his complaint." Dkt. No. 33 at 14. Regardless of the reality that these "facts" appear nowhere in the amended complaint, Plaintiff does not even allow the Court to reasonably infer Commissioner Wright's "knowledge," because Plaintiff made no attempt to plead "knowledge"; instead, he clings to conclusory allegations that DPS and Wright were deliberately indifferent. Dkt. No. 31 ¶¶ 5-6, 16-17, 38, 47-50.  Instead of properly pleading this element of his claim, Plaintiff mistakenly asks the Court to import arguments

allegations are merely "conclusory," lacking any allegation that Defendant Wright had actual knowledge of discrimination such that he acted with deliberate indifference.  Iqbal, 556 U.S. at 678. Because a formulaic recitation of the elements is insufficient, Plaintiff can seek only injunctive relief, not monetary damages, on his Title II and Section 504 claims.  Therefore, Defendants' motion to dismiss Plaintiff's claims for monetary damages is **GRANTED**.

### II. Defendant Wright's motion to dismiss.

Defendant Wright contends Plaintiff's claims against him—all of which are brought against him in his official capacity—should be dismissed for three reasons.  Dkt. No. 40-1 at 1-3.  First,

---

from his response brief into his complaint and make reasonable inferences based on those arguments, that is, a "Court imagined" third amended complaint drawn from sections of the briefs. Plaintiff's request suffers several flaws.  First, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."  Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) (citing Kelly v. Kelly, 901 F. Supp. 1567, 1570 (M.D. Fla. 1995).  Second, while courts should "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts have discretion to deny such requests "when the moving party's delay was the result of bad faith, dilatory tactics, or sheer inadvertence, or when the moving party offers no adequate explanation for a lengthy delay."  In re Engle Cases, 767 F.3d 1082, 1119 (11th Cir. 2014) (footnote omitted) (citations omitted).  Here, Plaintiff offers no explanation for his failure to allege these "facts" that are purportedly "common knowledge," such that they were presumably available to him, in his original complaint, dkt. no. 1, amended complaint, dkt. no. 10, and finally, the controlling pleading, his second amended complaint, dkt. no. 31.  So, to the extent Plaintiff requests leave to file a third amended complaint, that request is **DENIED**.

Plaintiff failed to properly serve Defendant Wright, id. at 1–2; second, Defendant Wright is not a proper defendant because the claims against him are redundant, id. at 2–3; and finally, Defendant Wright incorporates and asserts the grounds for dismissal asserted by all other Defendants in this case, id. at 3; dkt. nos. 32, 32-1.

### A. Plaintiff's individual capacity claims against Defendant Wright are improper.

Defendant Wright correctly notes that while Title II creates a private cause of action for money damages against public entities that violate its provisions, "individuals and private entities . . . are not subject to liability under Title II." Brennan v. Thomas, 780 F. App'x 813, 822 (11th Cir. 2019) (citing Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010) ("[o]nly public entitles are liable for violations of Title II of the ADA" (citations omitted))); Miller v. King, 384 F.3d 1248, 1276-77 (11th Cir. 2004), vacated and superseded on other grounds, 449 F.3d 1149 (11th Cir. 2006). So, to the extent Plaintiff seeks money damages for alleged Title II or Section 504 violations from Defendant Wright in his *individual* capacity, those claims fail as a matter of law.

### B. Plaintiff can pursue claims for prospective injunctive or declaratory relief against Defendant Wright.

Insofar as Defendant Wright contends Plaintiff *cannot* pursue declaratory or injunctive relief against him as a state official in his official capacity, that conclusion is misguided.   To the contrary, Plaintiff *can* pursue prospective injunctive or declaratory relief against Defendant Wright for ongoing violations of Title II.   Nat'l Assn. of the Deaf v. Florida, 980 F.3d 763, 774 (11th Cir. 2020) (affirming district court's finding that plaintiffs were entitled to pursue injunctive relief under the doctrine of Ex parte Young, 209 U.S. 123 (1908), for ongoing violations of Title II); see also Miller, 384 F.3d at 1264-65.   Ex parte Young makes clear "that official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." Wallace v. Ga. Dep't of Transp., No. CIV.A. 7:04-CV-78, 2005 WL 2031111, at *16 (M.D. Ga. Aug. 23, 2005) (citations omitted), reconsideration granted in part on other grounds, No. CIV.A. 7:04-CV-78, 2006 WL 1431589 (M.D. Ga. May 23, 2006), aff'd, 212 F. App'x 799 (11th Cir. 2006).

In Miller, the Eleventh Circuit held Title II permits official capacity suits for prospective relief, intended to regulate future conduct, against a state prison warden in his official capacity because the ADA does not bar suits for injunctive relief brought under Ex parte Young, 209 U.S. at 123.   Miller, 384 F.3d at 1264

("Therefore, we join our sister circuits in holding that the Eleventh Amendment does not bar ADA suits under Title II for prospective injunctive relief against state officials in their official capacities." (collecting cases)).    So, Plaintiff correctly notes that he *can* pursue prospective, injunctive relief claims against Defendant Wright in his official capacity.

**C. Plaintiff failed to properly serve Defendant Wright.**

Nonetheless, Plaintiff's claims against Defendant Wright are subject to dismissal because Plaintiff failed to accomplish service within the parameters of Federal Rule of Civil Procedure 4.

Plaintiff concedes he has not served Defendant Wright individually but argues that, because his claims are brought against Defendant Wright in his official capacity, service on DPS is sufficient to confer service on Defendant Wright.   Dkt. No. 41 at 2 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Defendant Wright, on the other hand, contends dismissal is warranted because Plaintiff failed to perfect service in accordance with Rule 4(e).   Dkt. No. 40-1 at 1-2.

Service of process is a jurisdictional requirement such that the Court lacks personal jurisdiction over a defendant who has not been properly served.   Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).   Where the validity of service is challenged, "the standards of proof governing motions to dismiss

for lack of personal jurisdiction" are applicable.  <u>Kammona v. Onteco Corp.</u>, 587 F. App'x 575, 578 (11th Cir. 2014) (per curiam) (citations omitted).  So, "the party on whose behalf service is made has the burden of establishing its validity."  <u>Familia De Boom v. Arosa Mercantil, S.A.</u>, 629 F.2d 1134, 1138 (5th Cir. 1980) (citation omitted), <u>abrogated on other grounds by</u> <u>Ins. Corp. Of Ir., Ltd. v. Compaignie des Bauxites de Guinee</u>, 456 U.S. 694 (1982).[6]

Where a state official is sued in his *individual* capacity, service of process is governed by Federal Rule of Civil Procedure 4(e), requiring personal service on individuals.  Fed. R. Civ. P. 4(e).  "Rule 4 is silent, however, as to the proper method of service on a state officer sued in his official capacity, though Rule 4(j)(2) addresses service on a state or local government." <u>Hudson v. Morris</u>, No. 4:20-CV-120, 2021 WL 2188571, at *2 (S.D. Ga. May 28, 2021).  Under Rule 4(j)(2),

> A state . . . or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).

---

[6] Decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981 constitute binding precedent in this Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

The Court is not aware of any Eleventh Circuit precedent addressing the issue of proper service on a state official sued only in his official capacity, and district courts within the Eleventh Circuit appear split on the issue. Compare Davis v. Green, No. 1:12-cv-03549-JOF, 2013 WL 12063901, at *2 n.1 (N.D. Ga. May 15, 2013) ("[C]ourts generally hold that when defendants are sued in their individual *and* official capacities, service must be made upon defendants in a manner to satisfy individual service." (emphasis added)) and Gueli v. United States, No. 806CV1080T27MSS, 2006 WL 3219272, at *4 (M.D. Fla. Nov. 6, 2006) ("An official capacity claim against a state official *may* be effected under the rules for individual capacity suits." (emphasis added) (citation omitted)), with Garvich v. Georgia, No. 3:20-cv-122-TCB, 2020 WL 8766016, at *4 n.4 (N.D. Ga. Dec. 8, 2020) ("To the extent that Garvich seeks to sue any Defendant in his or her official capacity, those claims would be governed by the service rules of 4(j)(2)." (citation omitted)) and Horton v. Maldonado, No. 1:14-cv-0476-WSD, 2014 WL 6629743, at *3 (N.D. Ga. Nov. 21, 2014) ("Officers sued in their official capacities must, under Federal Rule of Civil Procedure 4(j)(2), be served in the same manner as cities.").

By the same token, there appears to be no consensus among the circuits. "Some courts have held that service of process for public employees sued in their official capacity is also governed by the rule applicable to serving individuals," while other "courts

have held that state officers sued in their official capacities must be served in accordance with Rule 4(j)."   4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1109 (4th ed. April 2023 update); compare Caisse v. DuBois, 346 F.3d 213, 216 (1st Cir. 2003) (applying Rule 4(e) to state employees sued in their official capacities) and Whatley v. D.C., 188 F.R.D. 1, 2 (D.D.C. 1999) (holding public official sued in official capacity must be served according to Rule 4(e) and consequently is subject to waiver provisions of Rule 4(d)) and Amen v. City of Dearborn, 532 F.2d 554, 557 (6th Cir. 1976) ("Though the amended complaint fails to reflect whether the individuals were sued in their official or individual capacities, even if they were sued in their official capacities, proper service of process would still be necessary to obtain personal jurisdiction over those officials." (citations omitted)), with Moore v. Hosemann, 591 F.3d 741, 746-47 (5th Cir. 2009) (Mississippi secretary of state sued in his official capacity must be sued under Rule 4(j) governing service of state government entities) and Chapman v. N.Y. State Div. for Youth, 227 F.R.D. 175, 170-80 (N.D.N.Y. 2005) (Rule 4(j) governs service of public official sued in official capacity) and Cupe v. Lantz, 470 F. Supp. 2d 136, 139-40 (D. Conn. 2007) (service of official sued in official capacity governed by Rule 4(j)).

Plaintiff contends his claims are brought against Defendant Wright in his official capacity for prospective relief pursuant to

the doctrine of Ex parte Young, 209 U.S. at 123.  Dkt. No. 41 at 2-3.  So, Plaintiff argues, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," proper service on DPS is sufficient.  Id. (quoting Graham, 473 U.S. at 166).

However, Plaintiff's argument misses the mark by failing to appreciate that claims for prospective, injunctive relief are the exception to that rule—the very exception to which Plaintiff affixes his claims against Defendant Wright.  See Graham, 473 U.S. at 167 n.14 ("Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State." (citing Ex parte Young, 209 U.S. at 123)); Scott v. Taylor, 405 F.3d 1251, 1255 (11th Cir. 2005) ("Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued directly in its own name regardless of the relief sought . . . . Thus, the instant action—seeking prospective relief against these state legislator defendants in their official capacities—is not to be treated as an action against the entity.").

It necessarily follows that because an official capacity suit for prospective, injunctive relief is not treated as a suit against the entity, Ex parte Young, 209 U.S. at 123, service on Defendant Wright must be accomplished pursuant to Rule 4(e).  See Wallace, 2005 WL 2031111, at *17 (warning the court would dismiss official

capacity claims against state officials who had not been personally served even though the Georgia Department of Transportation had been served); see also Wright v. Curry, No. 1:20-cv-2592-MLB-JKL, 2021 WL 486150, at *2 (N.D. Ga. June 10, 2021) (concluding that service on Department of Revenue did not confer service on commissioner sued in official capacity such that the commissioner had good cause for not filing an answer and the court lacked jurisdiction over plaintiff's claims).

Accordingly, the Court lacks jurisdiction over Plaintiff's claims against Defendant Wright because he has not been properly served. Pardazi, 896 F.2d at 1317. Thus, Defendant Wright's motion to dismiss is **GRANTED**.

### D. Redundancy

Even if the Court were to conclude, as Plaintiff contends, that service on DPS pursuant to Rule 4(j) was sufficient to confer jurisdiction over Defendant Wright, Plaintiff's claims against Defendant Wright are subject to dismissal because they are duplicative of Plaintiff's claims against DPS.

Whether Plaintiff's claims against Defendant Wright in his official capacity are duplicative of his claims against DPS is a different question from whether Plaintiff *can* sue Defendant Wright in his official capacity. See supra pp. 37-38. Indeed,

> The focus of Miller was not upon whether an individual
> defendant *must* be sued in his official capacity but only
> upon whether when such an individual is sued in his

> official capacity, the Eleventh Amendment bars the
> action. The question to be decided in <u>Miller</u> was whether
> the state of Georgia th[r]ough its agent the warden could
> be held to the provisions of the [ADA] requiring
> injunctive relief. *That is a far different matter from*
> *saying that the warden individually was a necessary*
> *party or that a claim against the state and the warden*
> *would have been redundant.*

<u>Russell v. City of Tuscaloosa</u>, No. CV 05-PWG-0372-W, 2005 WL
8158432, at *7 (N.D. Ala. July 25, 2005) (emphasis added); <u>see also</u>
<u>Miller v. King</u>, No. CV698-109, 2007 WL 2164534, at *3 (S.D. Ga.
July 24, 2007) (dismissing only the plaintiff's claims for damages
against the individual defendants in their individual capacity,
and not dismissing the plaintiff's claim for injunctive relief
against the entity).

So, while Title II *permits* official capacity suits for
prospective relief against state officials, that isn't the only
route for Plaintiff's claims.  Defendant Wright concedes that both
the ADA and RA "abrogate Eleventh Amendment and sovereign immunity
for [ADA and RA] claims where a constitutional violation is pleaded
and shown," such that Plaintiff "can seek declaratory and
injunctive relief, and monetary damages, against the public entity
defendant."  Dkt. No. 42 at 3.

So, if, as Plaintiff contends, service on Defendant Wright
can be accomplished under Rule 4(j), because his claims "are
'duplicative' of the claims against the Department of Public Safety
in almost all material respects—including for service of process,"

dkt. no. 41 at 3, then Plaintiff's claims against Defendant Wright are redundant and subject to dismissal.

Therefore, because Defendant DPS is the public entity, meaning, as Defendants concede, "that the plaintiff can seek declaratory and injunctive relief, and monetary damages, against" DPS, the same claims asserted against Defendant Wright in his official capacity are redundant.  Dkt. No. 42 at 2-3; Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).[7]

Accordingly, Plaintiff's claims against Defendant Wright fail both because he failed to properly serve Defendant Wright and because the claims are redundant.  As a result, Defendant Wright's motion to dismiss, dkt. no. 40, is **GRANTED** in its entirety.

### CONCLUSION

For these reasons, Defendants DPS and Frazier's motion to dismiss, dkt. no. 32, is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to Plaintiff's Title II and Section 504 claims for money damages against DPS (Counts I and II).  The motion is **DENIED** as to Plaintiff's Title II and Section 504 claims for declaratory and injunctive relief against DPS (Counts I and II) and Plaintiff's § 1983 claim against Defendant Frazier (Count III).  Defendant

---

[7] Nevertheless, were the claims against Defendant Wright to go forward, the same analysis of Plaintiff's claims against DPS, supra pp. 23-36, would apply.  However, as noted, Plaintiff's claims fail both because of his failure to properly serve Defendant Wright and because the claims against Defendant Wright are duplicative of Plaintiff's claims against DPS.

Wright's motion to dismiss, dkt. no. 40, is **GRANTED**.   Therefore, Plaintiff's claims for declaratory and injunctive relief against DPS (Counts I and II) and Plaintiff's § 1983 claims against Defendant Frazier (Count III) remain pending.   The Clerk is **DIRECTED** to terminate Wright as a defendant in this matter.   The stay of deadlines is hereby lifted, and the Parties are **ORDERED** to file their Rule 26(f) report within **fourteen (14) days** of the date of this Order.

   **SO ORDERED** this 28th day of August, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA